**STATE of Minnesota, Respondent,**

**v.**

**Scott Allen SCHARMER,
Petitioner, Appellant.**

**No. C0–92–151.**

Supreme Court of Minnesota.

June 11, 1993.

John M. Stuart, State Public Defender, Evan Jones, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., William F. Klump Jr., Asst. Atty. Gen., St. Paul, and Kenneth Kohler, Nobles County Atty., Worthington, for respondent.

WAHL, Justice.

Appellant Scott Allen Scharmer was convicted after a jury trial in Nobles County District Court of two counts of third degree burglary, Minn.Stat. § 609.582, subd. 3 (1990), in connection with the burglary of a hardware store and a grocery store in Wilmont, Minnesota. The court of appeals affirmed. *State v. Scharmer*, No. C0–92–151, 1992 WL 340563 (Minn.Ct.App. Nov. 17, 1992). The only issue Mr. Scharmer raises on appeal to this court is whether the evidence is legally sufficient to support the convictions. We hold that it is not and reverse.

The evidence introduced at trial was as follows:

Arleen and Dennis Gerber, returning to their apartment above Denny's Tap on Main Street in Wilmont at approximately 3:20 a.m. on June 2, 1991, observed a strange black car parked down the block. As they entered the back door of the bar, they saw through the bar's front window two men coming out of the hardware store across the street. The Gerbers testified that one of the men was a thin white man and described the other as heavier set and darker complected, possibly Mexican, with a moustache. Both men were wearing t-

shirts and jeans. Neither Arleen nor Dennis could positively identify defendant at trial.

While Dennis was dialing 911, Arleen saw the men cross Main Street and enter the grocery store. She then saw one of the men leave the store and proceed around the corner by the bank. Dennis went out the back door of the bar where he saw two figures standing across the alley about 150 yards away. As Police Chief Daryl Behrends drove past them in his unmarked pickup truck, Dennis saw the men duck down into the weeds. When the men stood up and started walking towards him, Dennis went back inside. Chief Behrends parked by the strange black car, thinking it might be the burglars' getaway vehicle. Deputies searched the immediate area, but found nothing except a crowbar.

Worthington police officer Kevin Dather and his canine partner Max, called in to conduct a scent search, began tracking in the area where the suspects were last seen. The trail led west past a baseball diamond and ended at a farm. When they were near the baseball diamond, Max had seemed to indicate a second track to the north, where about 100 yards away there was a grain elevator. Instead of allowing Max to follow this secondary track, Dather took him back to the squad car to give him a drink and wet his nose, then drove the dog to the elevator. As soon as he was let out of the car, Max ran into the building where he found appellant lying on the floor with his right arm tucked around behind a stairway wall.

Responding to Dather's call for assistance, Deputy Sheriff Duane Rogers arrived on the scene, handcuffed appellant and ordered him to lay face down in the dirt outside of the elevator. While appellant was on the ground, Max bit him on the leg twice. After appellant was taken into custody, Dather and Rogers searched the elevator but failed to find a second suspect. They did find a glove at the bottom of the stairs by the wall where appellant had been discovered. Dather testified that the glove was clean and appeared new; Rogers said it was dirty.

Nineteen days later, Deputy Rogers returned to the unsecured elevator and found another glove under a safe and a pry bar lying between sacks of feed in the area where appellant had been discovered, neither of which had been found during the first search. Laboratory analysis of the pry bar revealed no traces of wood or aluminum fragments on it. Neither the gloves, the pry bar, nor the strange black car were ever linked to appellant or to the burglaries. The Bureau of Criminal Apprehension (BCA) determined that footprints photographed in the area where the two suspects had been seen did not match appellant's shoes.

Rebecca Prins, 11, and Jason Brotzel, 12, were out riding their bicycles at around 3:30 a.m. on June 2. Rebecca testified that she saw a short fat man wearing a long-sleeved shirt with yellow shoulders and either sweat pants or blue jeans pounding on the door of the hardware store. Jason testified that he saw two men by the door of the hardware store, one of whom was "kind of short" and wearing a black shirt with elbow-length sleeves and yellow striping on the shoulders.

Appellant is an American Indian of medium build, 5′ 11″ tall and weighing 210 pounds. When he was arrested at the grain elevator, he was wearing a gray tank top and dark pants; he did not have a moustache. Appellant told police that he had left St. Paul, drunk, and hitchhiked to Sioux Falls, South Dakota to see the Corn Palace; that, on the way back, he had gotten a ride into Wilmont where he thought he might be able to jump a train; that finding no tracks in town, he went to sleep in the abandoned grain elevator where he was later awakened by Max.

Appellant was convicted as charged, after trial by jury, and sentenced to concurrent prison terms of 21 and 25 months. The court of appeals affirmed the convictions. We granted review because of our concern as to the legal sufficiency of the evidence upon which those convictions were based.

▆▆▆▆ Convictions based on circumstantial evidence warrant particular scrutiny.

See State v. Bias, 419 N.W.2d 480, 484 (Minn.1988). We have said that in such cases the circumstantial evidence must do more than give rise to suspicion of guilt; "[i]t must point unerringly to the accused's guilt." State v. Loss, 295 Minn. 271, 281, 204 N.W.2d 404, 409 (1973) (citation omitted). We must ask whether the reasonable inferences legitimately drawn from the circumstantial evidence presented at trial "are consistent with [appellant's] guilt and inconsistent with any rational hypothesis except that of guilt." State v. Drieman, 457 N.W.2d 703, 711 (Minn.1990) (citing State v. Race, 383 N.W.2d 656, 662 (Minn.1986)). A detailed review of the evidence in this case, made in a light most favorable to the verdict, does not exclude, beyond a reasonable doubt, all reasonable inferences other than that of appellant's guilt.

Although appellant's size and complexion fits the Gerbers' general description of one of the two men seen at the door of the hardware store, both witnesses said they believed the darker man had a moustache and was wearing a t-shirt. Appellant was clean-shaven and wearing a tank top when he was found in the grain elevator. No witness made a positive identification of him as one of the burglars.

 The state presented evidence proving that two burglaries had been committed, but this evidence did not prove that appellant was one of the men who had committed the crimes. Proper foundation was laid for the dog tracking evidence, but Dather's interruption of and intervention in the tracking raises a reasonable doubt as to whether Max was alerting to the original scent after being driven to the elevator. Even assuming that he was does not rule out the rational hypothesis that the suspect they were trailing had passed by the elevator where appellant was sleeping and gone on to the north. While the use of dog tracking has been held proper, we agree with the court in McDuffie v. State that such evidence "should be used only to corroborate other evidence and is not sufficient standing alone to support a conviction." 482 N.W.2d 234, 237 (Minn.App.

1992), pet. for rev. denied (Minn., April 13, 1992).

This court has, on other occasions, reversed convictions of crimes more egregious than burglary where the evidence has been legally insufficient. In State v. Webb, 440 N.W.2d 426 (Minn.1989), we reversed a conviction of first degree premeditated murder for insufficiency of the evidence, even though, after the murder, the defendant shaved his beard, gave away some of his clothing, and made an apparently joking reference to a friend that he "did it." In State v. Berndt, 392 N.W.2d 876 (Minn.1986), we reversed convictions of eight counts of first degree murder for insufficient evidence, despite the fact that the defendant, who was shown to have been promiscuous, was the only survivor of a house fire in which his wife and children burned to death.

In the case before us, none of the physical evidence introduced by the state was ever linked to appellant, who fit the description given by the eyewitnesses primarily because of the color of his skin. Proof of the facts was left more to conjecture and speculation than to reasonable inferences. The evidence did not form a complete chain leading so directly to appellant's guilt as to exclude beyond a reasonable doubt any rational hypothesis except that of his guilt. We hold, therefore, that the evidence is legally insufficient to support appellant's convictions of third degree burglary.

The judgment of the court of appeals is reversed.