**STATE of Minnesota, Appellant,**

v.

**Bradford Dean JONES, Respondent.**

**No. C2–92–1172.**

Supreme Court of Minnesota.

May 20, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Paul R. Scoggin, Asst. Hennepin County Atty., Minneapolis, for appellant.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

Respondent, Bradford Dean Jones, was charged with conspiracy to commit murder, pursuant to Minn.Stat. § 609.175, subd. 2(2) (1992); conspiracy to commit first degree assault, pursuant to Minn.Stat. §§ 609.221 (1992), 609.101, subd. 2 (1990), and 609.175, subd. 2(3) (1992); assault in the second degree, pursuant to Minn.Stat. §§ 609.222, 609.101, subd. 2, 609.11, and 609.05 (1990); and assault in the third degree, pursuant to Minn.Stat. §§ 609.223, subd. 1 (1992), 609.-101, subd. 2 (1990), and 609.05 (1990). Following a jury trial, he was acquitted of the conspiracy charges but found guilty of second and third degree assault. He was sentenced to 36 months in prison under the mandatory sentencing provisions of Minn. Stat. § 609.11 (1990).

Respondent appealed, alleging first that the trial court had abused its discretion by failing to instruct the jury that in a case based on circumstantial evidence the evidence must "exclude every reasonable hypothesis except guilt" and second that there was insufficient evidence to convict. The court of appeals 498 N.W.2d 44 found sufficient evidence to convict but held that the trial court had abused its discretion in failing to give the requested instruction and ordered that respondent be given a new trial. The state appealed this ruling. We find no abuse of discretion in the trial court's failure to give the requested jury instruction. However, we hold that the evidence was insufficient to support the convictions and reverse.[1]

---

1. Because respondent was released from prison in December 1993, there is some question as to whether the case is moot. The standard for finding that the issues involved in a criminal appeal are moot is stringent. Where there remains a "possibility that adverse collateral legal consequences will inure to the complaining party, the case is not moot." *State ex rel. Djonne v. Schoen,* 299 Minn. 131, 133, 217 N.W.2d 508, 510 (1974) (citing *Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 1898–99, 20 L.Ed.2d 917 (1968)). We note that respondent is on supervised release status until November 1994. Further, he had no criminal record prior to his conviction in this case, and he now has a criminal history which could have an impact on sen-

The evidence presented at trial told the following story: on the afternoon of October 4, 1991 respondent's brother, Edward Jones, shot respondent's coworker Eugene Blair.[2] After work on the day before the shooting, Blair, who is considerably larger than respondent (six feet four inches tall and 290 pounds), approached respondent at his bus stop and accused him of making derogatory remarks about Blair to their coworkers. When respondent denied making the comments, Blair grabbed him by the shirt and threatened to punch him if the comments continued. Respondent was so frightened that he wet his pants. Prior to this confrontation, respondent felt that he and Blair got along fine, except for an incident in which Blair made a racist remark that respondent thought was directed at him.

Respondent testified that after Blair confronted him at the bus stop, he was too humiliated to take the bus home. He walked to his sister's house to change clothes and then walked to his girlfriend's house. Respondent did not report to work the following day, but did go in to pick up his paycheck. Respondent explained to the personnel manager that he had not come into work because he was upset about the incident with Blair.

Respondent then cashed his check and went to a bar for a couple of beers. Later he went to the home of his girlfriend who sent him grocery shopping. Respondent testified he rode his bike, a blue 10–speed, to the store and while there decided to find his brother and invite him to dinner. Respondent testified that when he arrived at his brother's house, his brother asked why he was not at work. Respondent replied that someone was hassling him at work and that he had not gone to work because he did not want to deal with it anymore. Respondent then told his brother that the person who was hassling him looked like one of their friends who is six feet five inches and 250 pounds.

The day of the shooting Blair left work at his usual time, 3:55 p.m. While walking home he noticed a man whom he did not recognize following him on a bicycle, a brown, 18–speed model that was introduced at trial. The man, later identified as respondent's brother Edward Jones, said "Hey hold up," got off his bike and approached Blair. Believing that Jones was reaching for a weapon, Blair lunged at him, but Jones jumped out of his reach. Jones then pulled a gun out of his waist and pointed it at Blair's feet asking "You want to mess with me?" Blair responded, "Well, put down the gun." Jones then pointed the gun at Blair's head, again asking "You want to mess with me?" Blair testified that he told Jones he was crazy, and Jones shot him. Blair testified that he heard two shots and felt the impact of a shot as he was running away. Blair was hit in the lower back by one bullet.

A Minneapolis police officer, who was sitting in his car several hundred feet away, witnessed the incident. The officer testified that after firing at Blair, Jones got on his bike and rode directly toward the officer. The officer got out of his car, pulled his service revolver and ordered Jones to stop. When Jones did not stop the officer pulled the bike down by the handlebars and restrained him. The officer testified that Jones was obviously intoxicated, and a blood sample taken one hour later showed a .20% blood alcohol level. Police found $53.15 on Jones, and also confiscated a gun which was later found to have been purchased by respondent. Police abandoned attempts to interview Jones at the police station because he was under the influence of alcohol.

In investigating the shooting, police found no direct link between Jones and Blair that would provide a motive for the shooting. However, after police learned of the confrontation between Blair and respondent the prior day, and that the gun was registered to respondent, criminal complaints were filed charging respondent with conspiracy to com-

---

tencing should he be convicted of a crime in the future. Finally, having a criminal record could affect his ability to obtain future employment. Therefore, the issues raised in this case are not moot.

**2.** Edward Jones pled guilty to attempted second degree murder and was sentenced to 180 months.

mit murder[3] and charging his brother with attempted first degree murder. Respondent was arrested and interviewed by police. The interview was not recorded and notes made by the officer during the interview were discarded after a formal report was made.

According to trial testimony, respondent told the officer that he had seen his brother on the afternoon of the shooting and had invited him to dinner. The officer testified that respondent first said that he had never told his brother about his confrontation with Blair, but that after the officer stated that he did not believe this story, respondent said that he had mentioned the incident. At the Rasmussen hearing respondent denied telling the officer that he had not mentioned the confrontation or Blair's physical appearance to his brother.

During the trial, a friend of the Jones brothers testified that earlier on the day of the shooting, he, Edward Jones and a female friend had gone to the liquor store, and that Jones had claimed to have no money to pay for the alcohol that was purchased. The three returned to Jones' girlfriend's apartment and began drinking, at which time respondent rode up on a bike. Jones went outside and talked to him for a few minutes. The friend testified that the bike respondent was riding was a "little bit darker" than the brown 18–speed bike in evidence, but said that because he was "intoxicated at the time" he could not be sure of its color. On cross-examination he testified that respondent rode the blue 10–speed he always rode. The friend testified that when he looked outside a few minutes later, both respondent and Jones were gone. The female friend testified that respondent and Jones left some time before 3:30 p.m. The state contended that

respondent paid his brother the $50.00 that Edward Jones was carrying when he was arrested for the shooting.

Respondent acknowledged that he had purchased the gun during the previous summer and that he and his brother had used it for target practice. He testified that he had not used the gun since the previous July and that he had last seen it in the dresser drawer at his girlfriend's house where he kept it. Respondent did not know how his brother had gotten the gun, but testified that his brother had access to the apartment and knew where the gun was kept.

Respondent's girlfriend testified as a prosecution rebuttal witness. She admitted that respondent had been at her house the day of the shooting, but denied that he had dinner there. On cross examination, she acknowledged that she had previously told a defense investigator that respondent had gone to get stuffing for a turkey dinner that day. She also testified that, although Edward Jones did not have a key to her apartment, anyone could come and go because her children and friends were around.

Respondent's counsel requested a jury instruction stating that the jury could not base its verdict solely on circumstantial evidence unless the evidence was such as to exclude any reasonable hypothesis except guilt. The trial court denied this request. Respondent contends that the trial court abused its discretion in failing to give the requested jury instruction. Because we reverse respondent's conviction on other grounds, we do not reach this issue.[4]

■ Respondent argued in the court of appeals that the evidence presented at trial was insufficient to convict him.[5] In this case

---

3. The complaint later was amended to add three additional counts: Count II Conspiracy to Commit Assault, Count III Assault in the Second Degree, and Count IV Assault in the Third Degree.

4. We note, however, that in *State v. Turnipseed*, 297 N.W.2d 308, 312 (Minn.1980) this court said that "[a]lthough the phrase 'inconsistent with any other rational conclusion' has appeared in many of the cases concerning circumstantial evidence decided by this court, we have never held the phrase to be mandatory." We believe that *Turnipseed* would control here and that the trial

court did not abuse its discretion in failing to give the requested jury instruction.

5. Respondent did not appeal the decision of the court of appeals on the issue of sufficiency of the evidence. However, we said in *State v. Hannuksela*, 452 N.W.2d 668 (Minn.1990), that "it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be 'diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities.'" *Id.* at 673 n. 7 (citing Albert Tate, Jr., *Sua Sponte Consideration on Appeal*, 9 Trial Judges J. 68 (1970)). The United

there was no direct evidence linking respondent to the shooting of Blair. This court has held that a conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence. *State v. Scharmer*, 501 N.W.2d 620 (Minn.1993) (citing *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988)); *see also State v. Race*, 383 N.W.2d 656 (Minn.1986). In such cases "the circumstantial evidence must do more than give rise to suspicion of guilt; 'it must point unerringly to the accused's guilt.'" *Scharmer*, 501 N.W.2d at 622. Although we decline to require that a jury instruction including this standard be given, we wish to reaffirm that the standard of appellate review for circumstantial evidence cases remains as we have previously stated it, that "[c]ircumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except for that of guilt." *State v. Pilcher*, 472 N.W.2d 327, 335 (Minn.1991). Further, we have said that on appeal a conviction based on circumstantial evidence may stand "only where the facts and circumstances disclosed by the circumstantial evidence form a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt." *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980). Based on this standard, we conclude that the evidence in this case is insufficient to support the conviction.

At trial, there was no dispute that respondent's brother shot Eugene Blair; however, to support respondent's convictions for aiding and abetting second and third degree assault, the state needed to establish a sufficient link between respondent and his brother's actions, and on this point the state has failed. According to the state's theory, Jones was motivated to avenge the wrongs to respondent, who paid him to act and assisted him by identifying Blair and by supplying the weapon and the bicycle that Jones rode to the site of the crime. The actual evidence presented at trial, however, certainly does not point unerringly to respondent's guilt, as required by *Scharmer*. Other rational conclusions, such as the conclusion that Jones determined on his own to avenge the wrongs to respondent, are consistent with the evidence presented—that Jones had previously used the gun and had access to it without the assistance of respondent; that the bicycle that Jones rode to the crime scene was not the one owned by respondent; and that while Jones did not know Blair, he could have easily identified him, a white man, 6'4" tall, weighing 290 pounds, among a factory workforce of primarily Southeast Asian workers. The evidence does not form a complete chain leading so directly to respondent's guilt as to exclude beyond a reasonable doubt any rational hypothesis except that of his guilt. We hold therefore, that the evidence is legally insufficient to support respondent's convictions for second and third degree assault.

Judgment of conviction reversed.

---

States Supreme Court also has addressed this issue. In *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1935), the Court said:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fitness, integrity or public reputation of judicial proceedings.

Furthermore, "it is proper for an appellate court to decide an issue not raised on appeal * * * when the reasoning relied upon by the appellate court is neither novel nor questionable." *State v. Glidden*, 455 N.W.2d 744, 746 (Minn.1990). Certainly, there is no less novel or questionable theory than that which says the evidence in a criminal matter must be sufficient to sustain the conviction beyond a reasonable doubt. Therefore, we take up this issue in the interests of justice.