*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1267**

State of Minnesota,
Respondent,

vs.

Joseph Douglas Ankney,
Appellant.

**Filed April 13, 2015
Affirmed
Stauber, Judge**

St. Louis County District Court
File No. 69HI-CR-13-691

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James A. Borland, Hibbing City Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate State Public Defender, Stephen L. Smith, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant claims that the state failed to prove beyond a reasonable doubt that he was guilty of criminal damage to property. Because the evidence is sufficient to sustain appellant's conviction, we affirm.

## FACTS

In the early morning hours of August 21, 2013, B.S.'s garage door was spray-painted in red with vulgar words. B.S. testified that after she ended her romantic relationship with appellant Joseph Douglas Ankney in March 2013, her garage was vandalized in the same fashion eight or nine times. After several vandalisms occurred without the police apprehending the responsible person, B.S. set up a hidden trail camera that was operated on a motion-detection system.

On August 21, 2013, B.S.'s neighbor informed her that her garage had again been vandalized. B.S. promptly called the police, who downloaded trail camera photos taken at about 1:15 a.m., but the photos showed only the lower half of a person who was wearing long pants. An officer then went to Ankney's residence. Ankney was observed wearing a t-shirt and shorts and the officer did not see any spray paint on Ankney's hands. Ankney claimed that he did not damage the garage and that he had just returned from purchasing snacks at a Walmart store.

The police then viewed a security video at the Hibbing Walmart, which showed Ankney purchasing only a can of spray paint at 12:50 a.m. Officers obtained a copy of the receipt from that transaction, and located the same "fire red" spray paint in the store. In the security video, Ankney is wearing the same t-shirt and shorts the officer observed, but the t-shirt appears to be inside out.

The police interviewed Ankney again a week later. Ankney denied being at the Hibbing Walmart, but he eventually said that he had purchased a snack at the Grand Rapids Walmart.

At his jury trial on a charge of fourth-degree criminal damage to property, Ankney testified that he left Grand Rapids around 11:00 p.m. on August 20th. He then stopped at the Hibbing Walmart to buy a snack and spray paint to pinstripe his car, although he also submitted a photograph he claims shows the spray paint was used to cover a rust spot. When Ankney arrived at Walmart, he discovered that he had forgotten his wallet and had only enough money for the spray paint. He also claimed that he purchased the last can of "fire red" spray paint so that the officers could not have matched the receipt to another spray paint can in the store.

When confronted with the Hibbing Walmart security video showing him purchasing spray paint, Ankney stated that after purchasing the spray paint he went to get his wallet from his sister's home near Grand Rapids, made purchases from two different convenience stores, went to the Grand Rapids Walmart to purchase a snack, and then returned to his residence in Hibbing. Ankney submitted his bank statements showing what he claims are the convenience store purchases, but the statements show that the purchases were actually made on the day before the offense.

The jury found Ankney guilty, and this appeal followed.

### D E C I S I O N

Ankney argues that the state presented insufficient evidence to prove his guilt beyond a reasonable doubt. In considering a sufficiency-of-the-evidence claim, our review is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach their verdict." *State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008)

3

(quotation omitted). We must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013).

Ankney's conviction is based on circumstantial evidence, although neither party argues that standard. Circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." *Bernhardt v.* State, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (quotation omitted). A conviction based on circumstantial evidence warrants heightened scrutiny. *State v. Bolstad*, 686 N.W.2d 531, 539 (Minn. 2004). Although "it warrants stricter scrutiny, circumstantial evidence is entitled to the same weight as direct evidence." *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). The circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). We "examine independently the reasonableness of [the] inferences that might be drawn from the circumstances proved." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotations omitted).

In conducting this examination, we first "identify the circumstances proved," deferring "to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the

[s]tate." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quoting *Andersen*, 784 N.W.2d at 329). We next "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted). A proffered rational alternative hypothesis must be supported by more than "mere conjecture" and must "point to evidence in the record that is consistent with" the theory. *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008).

We conclude that the circumstances sufficiently prove Ankney's guilt. The evidence includes a security video showing Ankney purchasing red spray paint less than one hour before B.S.'s garage was vandalized with red spray paint, Ankney wearing his t-shirt inside-out at the store, and prior incidents of vandalism that began immediately after B.S. ended her relationship with Ankney. The words used in each act of vandalism were consistent and suggest a personal vendetta against B.S.

Because the circumstances proved support the conviction, we must next consider "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 594 (citing *Andersen*, 784 N.W.2d at 329). Ankney offered alibi evidence, but the inconsistencies in his regularly-changing version of events calls into question his credibility and thus are consistent with guilt. Ankney initially denied purchasing spray paint, but at trial he admitted to purchasing spray paint, claiming it was to pinstripe his car. He later claimed he used the spray paint to cover a rust spot. Ankney further claimed that at the Hibbing Walmart he forgot his wallet and could only afford to buy spray paint, but on appeal states that he had had his wallet but it was missing his bank card and driver's license.

5

Moreover, at trial, Ankney claimed he could not have committed the crime based on the following timeline: he purchased spray paint in Hibbing at 12:50 a.m.; went to pick up his wallet at his sister's house near Grand Rapids; went to two convenience stores; went to the Grand Rapids Walmart; returned to his Hibbing residence at 2:30 a.m; and finally spoke with the police shortly after his return. Ankney's claimed timeline is implausible given the distances he would have purportedly traveled during the allotted time period. And Ankney's bank account statement that he submitted to support his alibi shows the purchases he claimed to have made on the date of the offense were actually made the day before.

On this record, the jury was entitled to find that Ankney's testimony was not credible. *See Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 185 (Minn. 1986) ("Defendant obviously was not being truthful in his response, and his lack of truthfulness showed a consciousness of guilt."). Additionally, the "possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable." *State v. Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995). Finally, after careful review of the record, we conclude that Ankney's pro se arguments are without merit. Because the evidence against Ankney forms a complete chain of guilt and he does not offer a rational alternative hypothesis of innocence, we conclude that the jury's verdict must be upheld.

**Affirmed.**