*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1583**

State of Minnesota,
Respondent,

vs.

Joseph Ervin Peirce,
Appellant.

**Filed September 28, 2015
Reversed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1331327

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Rodenberg, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant Joseph Ervin Peirce appeals his conviction of failure to register as a

predatory offender, arguing that the conviction was not supported by the evidence.

Because we conclude that the evidence was insufficient to prove that appellant failed to register his primary or secondary address, we reverse.

**FACTS**

Appellant was convicted of an offense in 1999, requiring him to register as a predatory offender. On August 22, 2013, appellant submitted a change of information form to the Bureau of Criminal Apprehension (BCA), listing his primary address as his mother's apartment in Bloomington beginning September 6, 2013. He did not list any secondary address. The BCA mailed a letter to appellant at that address, requesting appellant to respond within ten days to verify that the address on file was correct. The BCA did not receive a response from appellant nor was the letter returned to the BCA as undeliverable.

On September 13, 2013, Bloomington detectives Ed Hanson and George Harms went to the Bloomington apartment to conduct a registration check. Upon arrival, Detective Hanson spoke to appellant's older brother, J.P., who told the detectives that appellant had not been staying at the residence, that he did not know appellant's whereabouts, and that he did not know how to contact appellant. Appellant was charged by an amended complaint with failure to register as a predatory offender, a felony offense, pursuant to Minn. Stat. § 243.166, subd. 5(a) (2012).

At trial, J.P. testified that appellant was living at the apartment, along with their mother and younger brother, J.M. J.P. explained that he was not home often, had an opposite schedule than his mother, and did not know that appellant received permission from their mother to stay at the apartment until he spoke to her after the officers visited

2

the home. J.P. testified that he did not get along with appellant and only saw him for ten minutes on one occasion when appellant came to the apartment after appellant "got out of prison."

Detective Hanson testified that J.P. told the detectives that appellant did not live at the residence but that appellant had called to ask if he could use that address as a mailing address. Detective Hanson did not speak to appellant's mother.

J.M. testified that he lived at the residence with J.P. and their mother for approximately one year beginning in February 2013. J.M. stated that from August 2013 until December 2013, he saw appellant approximately four to six times. Similar to J.P., J.M. had a busy work schedule and was not home often.

According to E.P., the manager of the apartment complex, appellant's mother, J.P., and J.M. were the only tenants residing at that apartment between August and December 2013. E.P. lived in the same complex and often saw the three tenants walking their two dogs. All tenants over the age of 18 were required to be on the lease, and failure to do so was a violation of the lease conditions. Appellant was not on the lease. E.P. testified that she did not see appellant around the apartment complex, but acknowledged that she did not know what appellant looked like. E.P. stated that after the police visited the apartment, J.P. came to her office to tell her that appellant was not residing at the apartment.

Appellant was arrested in Los Angeles on December 19, 2013. During phone calls placed from the Hennepin County Jail, appellant indicated that he was going to "stay around" and asked whether he could stay in Mille Lacs at his wife's home once he was

3

released.  These calls were recorded and kept as part of the jail's record in its normal course of business.  Redacted versions of the calls were played to the jury and admitted into evidence.

M.B., appellant's mother, was the only witness who testified for appellant.  M.B. stated that around September, she agreed to let appellant stay at her apartment.  M.B. worked night shifts and was not home often.  She estimated that, during the limited time that she was at the apartment, she saw appellant about three to five times from September to December 2013.  M.B. testified that in August 2013, close to the time appellant was "getting out" of jail, she told J.P. and J.M. that appellant would be staying with them.

The jury returned a verdict finding appellant guilty of the charged offense.  Appellant was ordered to complete a presumptive sentence of 39 months in prison.  This appeal followed.

### D E C I S I O N

Appellant argues that the evidence is insufficient to support the conviction of failure to register as a predatory offender under Minn. Stat. § 243.166, subd. 5(a), because the state failed to prove where appellant was living, how long he had been living there, and whether he intended to move there permanently.  We agree.

When we assess the sufficiency of the evidence, "we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).  We assume that "the jury believed

4

the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not reverse a conviction for insufficient evidence if the jury, acting with due regard for the presumption of innocence and the necessity of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

The state had to prove four elements to establish that appellant failed to register as a predatory offender: (1) that he is a person required to register as a predatory offender; (2) that he knowingly violated any registration requirements; (3) that "the time period during which [he] is required to register has not elapsed;" and (4) that his failure to register occurred between August 22, 2013 and December 19, 2013, in Hennepin County. *See* 10 Minnesota Practice, CRIMJIG 12.102 (2006). Appellant stipulated to the first and third element and does not contest the fourth. Our inquiry is therefore limited to the second element—whether appellant knowingly violated a provision in the registration statute.

A person who is required to register under the statute must register with the corrections agent or law enforcement authority the person's primary address and "all of the person's secondary addresses in Minnesota." Minn. Stat. § 243.166, subd. 4a(a)(1)-(2) (2012). In connection with a move to a new address, written notice must be given to the assigned corrections agent or to law-enforcement authority "at least five days before the person starts living at [the] new primary address." *Id.*, subd. 3(b) (2012). Subdivision 3(b) also requires the person to give written notice that the person "is no

longer living or staying at an address" to the "assigned corrections agent or . . . law enforcement authority that has jurisdiction in the area of the person's primary address . . . immediately after the person is no longer living or staying at that address." *Id.* Primary address is defined as "the mailing address of the person's dwelling." *Id.*, subd. 1a(g) (2012). And a "dwelling" is "where the person *lives* under a formal or informal *agreement* to do so." *Id.*, subd. 1a(c) (2012) (emphasis added). A secondary address is "where the person *regularly or occasionally stays overnight* when not staying at the person's primary address." *Id.*, subd. 1a(i) (2012) (emphasis added).

At trial, the district court instructed the jury that appellant was guilty of the charged offense if he "knowingly violated any of the requirements of registration."[1] The district court went on to explain:

> The requirements of registration include that the defendant must provide to a corrections agent or law enforcement authority the defendant's primary address. Primary address means the mailing address of the person's dwelling.
> The defendant must also provide to the corrections agent or law enforcement authority all of the defendant's secondary addresses in Minnesota . . . . Secondary address means the mailing address of any place where the person regularly or occasionally stays overnight when not staying at the person's primary address.

---

[1] We note that appellant was charged and convicted of violating subdivision 5(a). Subdivision 5(a) is entitled "criminal penalty" and provides, generally, that a person "required to register under this section who knowingly violates any of its provisions or intentionally provides false information to a corrections agent, law enforcement authority, or the bureau is guilty of a felony." Minn. Stat. § 243.166, subd. 5(a). Subdivision 5 does not contain any specific registration requirements. *See id.* Rather, the registration requirements are enumerated in the remainder of the statute, including content requirements, *id.*, subds. 4-4b (2012), registration procedures, *id.*, subds. 3-3a (2012), and time requirements, *id.*, subds. 1, 6 (2012).

6

The defendant must provide this information within five days of any change in primary or secondary address.

Similarly, in his closing arguments, the prosecutor stated, "[T]he two requirements [of registration] at issue here are, number one the defendant must register a primary address and, number two, the defendant must register any secondary address in . . . Minnesota within five days of that becoming applicable."

The statute, however, also requires the state to prove that appellant "knowingly" violated a provision of the registration statute. *Id.*, subd. 5(a). Knowledge "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny" compared to a conviction based on direct evidence. *Al-Naseer*, 788 N.W.2d at 473. This heightened scrutiny comes in the form of a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).

The first step is to identify the circumstances proved, giving deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2009). Under this step, we assume that the fact-finder rejected the defendant's version of events. *See Al-Naseer*, 788 N.W.2d at 473.

Taken in the light most favorable to the verdict, the evidence established the following circumstances: (1) J.P. saw appellant for a total of ten minutes on one occasion between August and September; (2) J.M. saw appellant at the residence approximately four to six times during the relevant time period; (3) appellant was not on the lease and

7

was not issued a key to the apartment; (4) J.P. told E.P. that appellant was not residing at the apartment; (5) on December 19, 2013, appellant was in the state of California; (6) appellant's mother saw appellant at her residence three or five times between September and December; (7) in appellant's recorded phone call from Hennepin County Jail, he is heard telling his mother that he was "gonna stay around here now"; and (8) appellant received a letter from the BCA at his registered primary address but did not respond to that letter.

The second step requires us to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail,* 831 N.W.2d at 599 (quotation omitted). "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011).

One reasonable inference consistent with guilt is the inference offered by the prosecutor in closing—that appellant had a secondary address in Minnesota which he failed to register. But that is not the only reasonable inference that may be drawn.

Another reasonable inference is that appellant had a secondary address in California where he *regularly or occasionally* stayed when he was not at his primary address in Bloomington.[2] This is a reasonable inference that is inconsistent with guilt.

---

[2] While the prosecutor argued in closing that "if [appellant] was in California that whole time between September and December, then the address in Bloomington is not his primary address," there is no evidence as to how long appellant was in California within that time frame. Instead, the evidence shows that the officers visited the apartment in

8

There is no requirement for persons required to register under section 243.166 to register secondary addresses located outside of Minnesota. *See* Minn. Stat. § 243.166, subd. 4a(a)(2) (requiring only a secondary address "in Minnesota").

"We have said that in such cases the circumstantial evidence must do more than give rise to suspicion of guilt; [i]t must point unerringly to the accused's guilt." *State v. Scharmer*, 501 N.W.2d 620, 622 (Minn. 1993) (quotation omitted). Because the circumstances proved are consistent with a reasonable inference of guilt, but also consistent with at least one reasonable inference that is inconsistent with guilt, we conclude that the evidence is insufficient to prove that appellant is guilty of the charged offense. *See id.* ("A detailed review of the evidence in this case, made in a light most favorable to the verdict, does not exclude, beyond a reasonable doubt, all reasonable inferences other than that of appellant's guilt."). Accordingly, we reverse.

In addition to his sufficiency of the evidence argument, appellant also alleges that (1) the district court committed reversible error by failing to instruct the jury that it must unanimously decide which of the violations he committed; (2) hearsay and overly prejudicial information about appellant were elicited by the prosecutor; (3) the district court improperly assessed the factors outlined in *State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978), so as to allow appellant to be impeached with his prior offenses; and

Bloomington on one occasion during the relevant time period. That visit took place one week after the date appellant indicated he would start living there. There is nothing in the record that indicates that other visits were conducted in the following three months, or that there were other letters sent to appellant by the BCA at that address.

(4) the court erred in raising the presumptive sentence by an extra three months.  Because we reverse appellant's conviction, we need not address his remaining arguments.

**Reversed.**