*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0974**

State of Minnesota,
Respondent,

vs.

Amreya Rahmeto Shefa,
Appellant.

**Filed May 31, 2016
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-13-39734

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

On appeal from her conviction of first-degree manslaughter, appellant argues that the evidence provided at trial was insufficient to prove beyond a reasonable doubt that she intended to cause the victim's death and was not acting in self-defense. We affirm.

**FACTS**

H.T. first came to the United States from Ethiopia in 1994. In 2006 he returned to Ethiopia to look for a wife. He was introduced to appellant Amreya Rahmeto Shefa, whom he married one month later. Over the next six years, H.T. traveled back to Ethiopia to have sex with appellant in order to have children. The couple had an arrangement that, when they had three children, appellant and the children would join H.T. in the United States. In 2012, appellant and two children moved to Richfield, Minnesota to live with H.T. The transition to life in the United States was difficult for appellant.

On the night of November 30, 2013, H.T. was drinking alcohol and allegedly chewing khat. Appellant's versions of events that night have been inconsistent.[1] After the others in the house had gone to bed, H.T. wanted to have sex with appellant. Appellant and H.T. had vaginal intercourse and H.T. made her perform oral sex. At that point, H.T. penetrated appellant's anus with a dildo. This testimony was corroborated by the presence

---

[1] Appellant has a limited ability to speak and understand English and required an Amharic interpreter. Additionally, testimony from the sexual assault nurse that it is not unusual for individuals reporting sexual assault to have continuity and chronology problems when describing the assault was credited by the district court judge. The district court believed that the significant language barriers account for some of the inconsistencies and therefore, those inconsistencies did not adversely affect appellant's credibility as a witness.

of two dildos in the room where the homicide occurred and by the consistency of the use of the dildo in appellant's story to the police, to the sexual assault nurse, and in her trial testimony. H.T. also showed appellant pornographic movies on the computer and asked her, "If these people are doing it, why can't you do it?" This evidence was corroborated by a computer that contained adult pornography found in the bedroom. The district court found that: "After [H.T.] penetrated [appellant's] anus with the dildo, [appellant] picked up a knife, which was in the room because she used it to cut an orange, and stabbed [H.T.]. She also stabbed [H.T.] with a second knife that [H.T.] used to open a bottle earlier in the evening." This was corroborated by the sliced orange and open bottles in the room where the homicide occurred, as well as two knives found with H.T.'s body. After the struggle, appellant called 911 and H.T. ran into the bathroom with the two knives used in the fight and locked the door.

Police officers arrived on scene around 4:53 a.m. and began searching for H.T. Blood covered much of the walls in the room, bottles and the vacuum cleaner were tipped over, and the room was in general disarray. The officers heard water running in the bathroom and kicked the door in. H.T. was in the bathtub, nude except for his socks; the officers observed a significant amount of blood. Two knives were found in the tub with him. The officers attempted to resuscitate H.T., but paramedics pronounced him dead at the scene.

An autopsy performed on H.T. indicated that he suffered "30 sharp force injuries, some stab wounds [and] a few more cuts."[2] A stab wound through the pumping chambers of H.T.'s heart was fatal. In the opinion of the doctor who conducted the autopsy, the injury to the heart, although an "unsurvivable wound," would not have instantly incapacitated H.T. H.T. had one stab wound in the back which could have caused death had it gone untreated. The autopsy also indicated that H.T.'s BAC was .09.

In her statement to the police detective the evening of the homicide, appellant stated that, when she said no to sex, H.T. said "We have to do it!" after which appellant stabbed him. H.T. then attempted to stab her with the second knife and she grabbed it from him and stabbed him again. The district court found that this evidence was credible and that the fact that appellant was left-handed combined with the presence of the cut on the right hand supports appellant's explanation for her injury, that H.T. inflicted the injury to her during the struggle. Dried blood on appellant's thigh and upper leg indicated that appellant was not clothed during the struggle that led to her wounds and H.T.'s death. The district court found that the lack of clothing on both appellant and H.T. during the struggle corroborated appellant's allegations of sexual assault.

The district court found appellant not guilty of murder in the second degree but, because appellant acted in the heat of passion, guilty of manslaughter in the first degree. Appellant was sentenced to 86 months in prison.

---

[2] A sharp force injury is "simply an injury that's caused by something that's got a very sharp edge on it." The most common example would be an injury caused by a knife which could cause cutting wounds or stabbing wounds.

4

In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This is especially true when the resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). "We use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011).

I. **Was the evidence sufficient to prove that appellant acted with the intent to cause the death of H.T.?**

"The intent element of a crime, because it involves a state of mind, is generally proved circumstantially, and the [factfinder] is in the best position to evaluate the credibility of witnesses and weigh the evidence regarding intent." *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). "While it warrants stricter scrutiny, circumstantial evidence is entitled to the same weight as direct evidence." *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). The circumstantial

evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than the defendant's guilt. *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). The factfinder is in the best position to evaluate circumstantial evidence and its verdict is entitled to due deference. *Webb*, 440 N.W.2d at 430.

In applying the circumstantial evidence standard, the reviewing court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the [factfinder's] acceptance of the proof of these circumstances and rejection of the evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598-99 (quotation and citations omitted). The reviewing court "construe[s] conflicting evidence in the light most favorable to the verdict and assume[s] that the [factfinder] believed the [s]tate's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted).

As part of its conclusions of law, the district court stated:

> Acting with the intent to kill means that the defendant acted with the purpose of causing death, or believed that the act would have that result. [Appellant] admits stabbing [H.T.] multiple times with two knives. One stab wound [appellant] admits was to [H.T.'s] chest. The majority of the stab wounds were to [H.T.'s] torso, indicating an intent to cause death. Therefore, the [s]tate proved beyond a reasonable doubt that [appellant] acted with the intent to kill [H.T.].

6

(Quotation and citation omitted).

Appellant alleges that "the circumstances proved do not establish beyond a reasonable doubt and to the exclusion of all other reasonable hypotheses that [appellant] acted with intent to kill." But appellant cut H.T. 30 times in a scuffle that started in the heat of passion. Intent to kill can be inferred from the nature and extent of the stab wounds. *See State v. Ortega*, 813 N.W.2d 86, 101 (Minn. 2012) (holding that premeditation can be shown by examining evidence about the nature of the killing, such as the number of wounds inflicted and the infliction of wounds to vital areas); *State v. Raymond*, 440 N.W.2d 425, 426 (Minn. 1989) (holding that intent to kill can be inferred from the nature and extent of the wounds and the fact that defendant left the victim to bleed to death while he went home to bed); *State v. Merrill*, 428 N.W.2d 361, 370 (Minn. 1988) (holding that a single fatal stab wound passing through the breast bone and into the heart sufficient to support intent to kill); *State v. Andrews*, 388 N.W.2d 723, 728-29 (Minn. 1986) (intent to kill shown by single stab wound to the back and appellant's attempt to leave the scene); *State v. Sanford*, 450 N.W.2d 580, 585 (Minn. App. 1990) (holding that defendant's acts of stabbing one victim 19 times and delivering a blow to the victim's head justified the jury's finding that defendant acted with intent to kill), *review granted* (Minn. Feb. 28, 1990), *order granting review vacated* (Minn. Mar. 22, 1990). Appellant caused multiple sharp-point wounds to H.T., one of which was clearly fatal and administered with enough force to go through the chest wall, part of his left fourth rib, the muscles between the ribs, the right ventricle of the heart, the back of the heart, the pericardial sac, and the top of H.T.'s liver. According to the doctor who testified at trial, it is difficult to tell how much force is required to cause

7

this type of injury because there are so many variables involved. However, it is evident that a person who stabs another person right below the left nipple, an area in which it is commonly known that stabbing would be fatal, with enough force to go through part of a rib, the heart, the pericardial sac, and the top of the liver, has acted with intent to kill.

Appellant's argument that she was merely trying to escape and was not attempting to kill is not a reasonable inference, based on the circumstances proved. The only injuries appellant sustained were a cut on her hand and a small superficial laceration to the forearm. In contrast, H.T. sustained one stab wound to the chest, one stab wound to the lateral right mid back, eight stab wounds and cuts of the chest and abdominal walls, two cuts on the right arm, eight stab wounds and cuts of the right wrist and hand, two cuts on the left hand, five stab wounds and cuts of the lower extremities, and three cuts of the back and right flank. Whether any of these wounds would, by itself, have caused the death of H.T. is not important. The disparity in appellant's and H.T.'s injuries does not support a reasonable inference that appellant was merely trying to escape. Additionally, the doctor testified that the wound to the heart would bleed very rapidly and that, while the injury is not instantly incapacitating, an individual can carry on for only a very short period of time after receiving such an injury.

The placement of the fatal blow, with the severe disparity of injuries between H.T. and appellant, including a stab wound to the back, and the fact that H.T. would not have been able to struggle for long after receiving the fatal wound, are sufficient evidence to support the district court's finding of appellant's intent to kill. There are no other reasonable inferences inconsistent with appellant's guilt.

8

**II.     Was the evidence sufficient to show that appellant did not act in self-defense?**

Once a defendant has produced evidence to support a self-defense claim, the state has the burden of disproving one or more of the elements beyond a reasonable doubt. *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014). Appellant contends that the state failed to provide sufficient evidence to prove beyond a reasonable doubt that appellant was not acting in self-defense.

The four elements of self-defense are (1) the defendant was not an aggressor or did not provoke the alleged victim; (2) the defendant had an actual and honest belief that imminent death or great bodily harm was going to result; (3) a reasonable basis existed for this belief; and (4) the absence of any reasonable means to retreat or otherwise avoid physical conflict. *Id.* "The degree of force used in self-defense must not exceed that which appears to be necessary to a reasonable person under similar circumstances." *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997).

The district court dismissed appellant's self-defense claim, stating that "[i]n this case, the number of sharp force injuries inflicted together with the victim's level of intoxication indicates that the force used by [appellant] greatly exceeds the degree of force required to defend herself." We agree. Appellant argues that only the first stab caused the death of H.T. and that his other wounds are inconsequential because "[the medical examiner testified that] the wound was unsurvivable regardless of what other wounds H.T. may or may not have had." Appellant also argues that the stab wound to H.T.'s chest was justified because H.T. had allegedly just used a knife to force appellant to have more anal sex and her hand was cut and that the other cuts to H.T.'s torso were not fatal and could

9

have been accidentally self-inflicted during the struggle. But even if some of H.T.'s injuries were accidentally self-inflicted,[3] the district court's conclusion that appellant exceeded the degree of force required to defend herself is supported by the evidence. Appellant used two knives to stab H.T. 30 times, including multiple times in the torso; she sustained three injuries to her arm and hand, only one of which required stitches. The disparity of injuries indicates that appellant exceeded the force required to avert serious bodily harm.

Appellant also argues that "[t]he evidence presented indicates that the threat to [appellant] only ended after she stabbed H.T.'s back and then fled from H.T. to the kitchen to call police," but no evidence in the record supports this argument. There is no indication of how the struggle ended or what caused appellant to call 911. Appellant's own recitation of the facts in her brief statement was that "[she] defended herself and then ran to the kitchen to get her cellphone from the drawer to call the police. [She] called the police, they got an interpreter on the line, and she told the police to come quickly." Appellant never testified that H.T. tried to prevent her from leaving the room.

Substantial evidence exists in the record to support the district court's conclusion that appellant did not act in self-defense.

**Affirmed.**

---

[3] At trial, the medical expert stated "[g]iven the totality of the circumstances and the number and distribution of his wounds, it strikes me as very unlikely that his actual death was by his own hand, but I can't take any single injury on his body and say no, that couldn't be self-inflicted."