*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0986**

State of Minnesota,
Respondent,

vs.

Michael Bruce Rostie,
Appellant.

**Filed July 25, 2016
Affirmed
Halbrooks, Judge**

Olmsted County District Court
File No. 55-CR-14-2092

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

    Considered and decided by Cleary, Chief Judge; Halbrooks, Judge; and Jesson, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction under Minn. Stat. § 152.137, subd. 2(a)(4) (2012) of storing methamphetamine paraphernalia in the presence of a child, arguing that the circumstantial evidence was insufficient to support a guilty verdict. We affirm.

## FACTS

Appellant Michael Bruce Rostie lived with his girlfriend, J.W., in the basement of a home belonging to D.E. D.E. lived upstairs along with her 13-year-old son. In the spring of 2014, a deputy from the Wabasha County Sheriff's Office came to the home to serve J.W. with legal documents. When J.W. answered the door, the deputy noticed that she appeared to be under the influence of drugs. The deputy reported his observations to Officer Timothy Parkin of the Southeast Minnesota Narcotics and Gang Task Force. Based on this information, Officer Parkin surveilled the home and searched through trash that had been placed curbside for pickup. Inside the trash, Officer Parkin found items suggesting the use of methamphetamine in the residence. Based on these findings, officers obtained a search warrant for the residence and for J.W.'s person.

Officers executed the search warrant, announcing their presence for approximately one minute before breaking in the door. Upon entering, Officer Parkin noticed a shadow down the stairs in the basement. Officer Parkin went downstairs, announced his presence, and observed a person go into the bathroom and close the door behind him. Officer Parkin immediately pushed the bathroom door open so that he could see inside. Upon doing so, he saw Rostie standing behind the door. Officer Parkin pulled Rostie out

2

from the bathroom and handed him over to another officer. When Officer Parkin went back inside the bathroom, he noticed the odor of smoke consistent with the recent use of methamphetamine and a broken pipe with white residue laying on the floor. Officers then found J.W. in a bedroom approximately three feet down the hallway from the bathroom.

Inside the bedroom, officers found numerous items associated with the use of methamphetamine, including a pill bottle containing 12.6 grams of methamphetamine, a large butane torch, an open box of unused hypodermic needles, a digital scale, a glass pipe with methamphetamine residue in it, a small vial containing 0.05 grams of methamphetamine, a small butane torch, and two additional pipes wrapped in paper towels inside of a makeup bag. Officers also searched the attached garage and discovered a plastic grocery bag with two empty pseudoephedrine packages, a nearly empty bottle of powdered drain cleaner, and the casings of AA lithium batteries from which the lithium elements had been removed. These latter items contain listed precursors for the manufacture of methamphetamine under Minnesota law. *See* Minn. Stat. § 152.0262, subd. 1(b) (2014). Officers also found Rostie's paystub in close proximity to these items in the garage.

Based on the items found in the residence occupied by Rostie and J.W., the state charged Rostie with one count of first-degree sale of methamphetamine, one count of second-degree possession of methamphetamine, and one count of storing methamphetamine paraphernalia in the presence of a child.

Rostie pleaded not guilty, and J.W. testified on Rostie's behalf at trial. J.W. testified that she had been a methamphetamine user off and on since 2011 and that she and Rostie had been fighting about her continued use of the substance the weekend before the residence was searched by police. She claimed ownership of many of the items found in their residence, including the pipe found in the bathroom with Rostie. She testified that she was going to put it in the toilet tank but dropped it on the floor because she was startled to find Rostie in the bathroom.

After both parties rested, the state dismissed the charge of first-degree sale of methamphetamine. The jury was instructed on both principal and accomplice liability for the remaining two charges—possession and storage of methamphetamine paraphernalia in the presence of a child. The jury found Rostie not guilty of the second-degree possession charge but guilty as both a principal and an accomplice to the charge of storing methamphetamine in the presence of a child. The district court sentenced Rostie to 18 months in prison. This appeal follows.

## D E C I S I O N

Under the traditional standard of review of sufficiency of the evidence, appellate courts "review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306-07 (Minn. 2014) (quotation omitted). But "[i]f a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *id.* at 307, appellate courts

4

apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to support a guilty verdict. The first step is to identify the circumstances proved. The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.

In identifying the circumstances proved, [appellate courts] assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses. This is because the jury is in the best position to evaluate the credibility of the evidence, even in cases based on circumstantial evidence. Under the second step of [the] analysis, [appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved.

*State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations and citations omitted). "[A] conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). "While it warrants stricter scrutiny, circumstantial evidence is entitled to the same weight as direct evidence." *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). The circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *Jones*, 516 N.W.2d at 549. A jury, however, "is in the best position to evaluate circumstantial evidence, and [its] verdict is entitled to due deference." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).

For the conviction of storage of methamphetamine paraphernalia in the presence of a child, the state was required to prove beyond a reasonable doubt that Rostie

(1) knowingly stored any methamphetamine paraphernalia (2) in the presence of a child. Minn. Stat. § 152.137, subd. 2(a)(4). Rostie does not dispute the presence of the items found in the home. Nor does he dispute the presence of a child in the home. He only argues that the evidence is insufficient to prove that he *knowingly* either directly stored methamphetamine paraphernalia in the home or aided and abetted J.W. in storing the paraphernalia. *See* Minn. Stat. § 152.137, subd. 2(a) ("No person may knowingly engage in any of the following activities in the presence of a child . . . .").

Rostie concedes that "the fact that these items were all found within the living space shared jointly by Rostie and [J.W.] is consistent with an inference that Rostie either stored one or more of these items himself, or that he intentionally assisted [J.W.] with their storage." But Rostie asserts that "none of the circumstances surrounding the discovery of any of these items can exclude the reasonable, alternative inference that Rostie was in fact not responsible in any manner for the presence of these items inside the house." This argument is without merit.

Rostie and J.W. were a couple who shared a living space, including the bedroom where most of the confiscated objects were discovered. The items found in the garage were in close proximity to a paystub with Rostie's name on it. Officers also found a penis pump located literally on top of a butane torch they uncovered during their search. Officer Parkin testified that male methamphetamine users frequently employ such devices because they begin to "develop a vascular restriction which restricts blood flow to the penis" as a result of extended use. Most tellingly, Officer Parkin witnessed someone enter the bathroom and found Rostie hiding in there with the broken

6

methamphetamine pipe and the odor of fresh methamphetamine smoke. Parkin testified that "[m]ethamphetamine has a smell that in a short period of time will quickly dissipate after it's smoked." Parkin did not recall smelling freshly smoked methamphetamine anywhere else in the home, including the bedroom where J.W. was found. It is not rational to conclude that J.W. dropped the pipe in the bathroom directly at Rostie's feet before running back to the bedroom given that the odor of freshly smoked methamphetamine was concentrated in the bathroom and not where J.W. was found. Further, even if it was J.W. who smoked the methamphetamine immediately before the officers arrived, it is unreasonable to believe that Rostie had no knowledge of the presence of paraphernalia in the home because, according to J.W., they had been arguing about the subject all weekend.

The circumstances proven are entirely consistent with the state's theory that Rostie was involved with the storage of methamphetamine at the residence and are inconsistent with any rational hypothesis except that of guilt. These inferences, taken together as a whole, support a finding of guilt to sustain a conviction of storage of methamphetamine paraphernalia in the presence of a child under Minn. Stat. § 152.137, subd. 2(a)(4).

**Affirmed.**

7